## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Tommy Fulcher et al.,**

**Plaintiffs,**

**v.**                                                    **Case No. 06-2095-JWL**

**City of Wichita and**
**Chief Norman Williams,**

**Defendants.**

## <u>MEMORANDUM & ORDER</u>

Plaintiffs filed this race discrimination suit on behalf of themselves and all other current and former African-American police officers employed by the City of Wichita's Police Department. This matter is presently before the court on defendant's motion to dismiss (doc. 4). As explained below, the motion is granted in part and denied in part.

*Service of Process*

As an initial matter, both defendants move to dismiss the complaint on the grounds that plaintiffs have failed to effect proper service on defendants. With respect to the City of Wichita, plaintiffs may effect service by delivering a copy of the summons and complaint to the chief executive officer or in a manner allowed by state law. *See* Fed. R. Civ. P. 4(j). Under Kansas law, service of process may be made upon a city by serving the clerk or the mayor. K.S.A. § 60-304(d)(3). Here, plaintiffs attempted to serve process by sending the summons and complaint via certified mail, return receipt requested, addressed to "The Clerk of the City of Wichita." The

return receipt indicates that the mail was delivered to a "D. Sidwell."  According to the City, D. Sidwell is not a person authorized to accept service and the only three persons authorized to accept service for the City are Karen Sublett, the City Clerk; Patsy Eichacker, the Clerk's assistant; and Carlos Mayans, the Mayor.

Plaintiffs assert that they have properly served the City by addressing the certified mail to the appropriate official, citing K.S.A. § 60-304(d) ("Service by return receipt delivery shall be addressed to the appropriate official at the official's governmental office."), regardless of whether that official actually signed for the mail.  The court agrees.  Kansas law requires that the summons and complaint be addressed to the clerk or the mayor (the "appropriate official" in the context of a city-defendant), whether by name or by title.  Stated another way, Kansas law does not require the specificity that defendants suggest–that the process be addressed to a person by name.  Here, plaintiffs complied with Kansas law by addressing the summons and complaint to the appropriate official by title, "The Clerk of the City of Wichita."  Service, then, is considered obtained regardless of whether the process was actually delivered to the Clerk herself.  *See* K.S.A. § 60-303(c)(2) & (3) (service of process shall be considered obtained upon delivery of sealed envelope addressed to the person to be served).  *Compare Riddle v. Wichita Public Schs., Unified Sch. Dist. No. 259*, 2005 WL 1563444, at *2-3 (D. Kan. June 30, 2005) (service not obtained where plaintiff addressed process to "Wichita Unified School District 259" rather than by addressing process to "a particular person, whether by name or title"); *Hopkins v. State*, 237 Kan. 601, 605 (1985) (service not obtained where plaintiff did not address process to clerk or mayor and instead intentionally served the city attorney); *and Dunn v. City of*

*Emporia*, 7 Kan. App.2d 445, 450 (1982) (same).

With respect to defendant Williams, plaintiffs may effect service by delivery in person or by leaving copies at the individual's dwelling or usual place of abode; in the alternative, service may be effect in any manner permitted under state law. *See* Fed. R. Civ. P. 4(e). Kansas law authorizes service upon an individual by return receipt mail to a place of business, after service to the dwelling or place of abode has been refused or unclaimed, and after a return of service has been filed testifying to the refused or unclaimed effort. *See* K.S.A. § 60-304(a). Plaintiffs attempted service on defendant Williams by sending a copy of the summons and complaint via certified mail, return receipt requested, addressed to Chief Norman Williams at his place of business, the City of Wichita. The return receipt indicates that the papers were delivered to D. Sidwell.

In such circumstances, service of process has not been made upon defendant Williams. Plaintiffs have not demonstrated by affidavit or otherwise that they attempted service by certified mail to defendant Williams' dwelling house or usual place of abode and that such service was refused or unclaimed. Only after providing the court with such proof can plaintiffs attempt service by certified mail, restricted delivery, at defendant Williams' business address. *See* K.S.A. § 60-304(a). Nonetheless, the court exercises its discretion and extends the time for plaintiffs to serve defendant Williams. *See Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995) (in the absence of good cause for failure to effect proper service, district court may exercise its discretion and extend time to serve). Plaintiffs shall obtain service of process on

defendant Williams no later than Friday, September 29, 2006.[1]

*Plaintiffs' Title VII Claims/Pleading Requirements*

Defendants move to dismiss plaintiffs' Title VII claims for failure to state a claim. The court begins with defendants' challenge to plaintiffs' disparate impact claims. In their complaint, plaintiffs allege that they have suffered "from the disparate impact of the department's policies" and further state that the "policies and procedures of the Department have had a disparate impact on minorities." The complaint also makes a general reference to the "facially neutral policies" of the department. According to defendants, the disparate impact claims must be dismissed because plaintiffs have failed to identify any specific policy which has a disparate impact on minority officers. While plaintiffs urge that they have identified specific

---

[1]Plaintiffs urge that they have satisfied the service requirements with respect to defendant Williams by virtue of the "substantial compliance" doctrine. *See* K.S.A. § 60-204 ("In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected."). According to plaintiffs, application of the substantial compliance doctrine is appropriate because defendant Williams is aware of this case. However, "the fact that a party had actual knowledge of the pendency of an action against him . . . is not a substitute for service." *Dunn*, 7 Kan. App. 2d at 450. Before there can be valid service pursuant to K.S.A. 60-204, there must be substantial compliance with some method of service and, thereafter, irregularities and omissions will be cured by awareness of the action. *See Briscoe v. Getto*, 204 Kan. 254, 256-57 (1969). A "new method of service," such as serving an individual at his place of business without first attempting service at his residence, does not satisfy K.S.A. § 60-204. *Id.* at 257 (attempting service on an individual by leaving a copy of the summons and complaint at the individual's place of business is a "new method of services that cannot be originated by K.S.A. 60-204" and there was "no method of statutory service that was substantially complied with").

policies, a liberal reading of their complaint reveals that they have alleged only general policies and, even in those circumstances, it is difficult to discern from the complaint which general policies plaintiffs contend have had a disparate impact and which policies are alleged to be intentionally discriminatory. In paragraph 49 of their complaint, plaintiffs include a laundry list of policies that they are challenging, without any statement as to whether these "policies" have a disparate impact or whether they are allegedly intentionally discriminatory (the vast majority of these purported policies do not appear to be facially neutral). By way of example, plaintiffs reference the following "policies and practices": failing to provide equal training opportunities; promoting race-biased individuals into managerial and supervisory positions without determining or attempting to evaluate whether such individuals are race-biased; relying upon subjective, race-biased and/or arbitrary criteria used predominately by a Caucasian supervisory force in making job assignments, compensation, overtime, training, termination and promotional decisions; paying minorities less than similarly situated Caucasians; retaliating against or permitting others to retaliate against minorities who protest the defendant's discriminatory policies and/or patterns and practices.

To establish a prima facie case of disparate impact discrimination, plaintiffs "must show that a specific, identifiable employment practice or policy caused a significant disparate impact" on the protected class. *Pippin v. Burlington Resources Oil & Gas Co.*, 440 F.3d 1186, 1200 (10th Cir. 2006). It is not enough for an employee to point to a generalized policy that leads to a disparate impact; the employee must identify a particular policy. *Id.* (citing *Smith v. City of Jackson, Mississippi*, 125 S. Ct. 1536, 1545 (2005). The allegations in plaintiffs' complaint

clearly are insufficient to establish a prima facie case of disparate impact discrimination.  While the court acknowledges that a prima facie case is "an evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), plaintiffs' complaint does not even satisfy the "simple requirements" of Federal Rule of Civil Procedure 8(a)(2).  Under that rule, a complaint need only contain "a short and plain statement of the claim" sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Id*. at 512 (quotations omitted).

In the context of a disparate impact claim, the court believes that a defendant will have "fair notice" of the claim only if the complaint identifies the specific policy that allegedly caused or causes a disparate impact.  *See White v. American Axle & Mfg., Inc*., 2006 WL 335710, at *4 (E.D. Mich. Feb. 14, 2006) (granting motion to dismiss disparate impact claims under Rule 12(b)(6) despite liberal pleading requirements where plaintiff failed to identify in complaint the specific policy or practice allegedly responsible for statistical disparity); *Mongo v. Home Depot, Inc*., 2003 WL 22227864, at *2 (N.D. Tex. Sept. 26, 2003) (granting motion to dismiss disparate impact claims where plaintiff failed to identify in complaint specific policy that caused disparate impact); *Kulkarni v. City University of New York*, 2002 WL 1315596, at *1-2 (S.D.N.Y. June 14, 2002) (same) (plaintiff "must identify a specific employment practice to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'").  Rather than dismissing plaintiffs' disparate impact claims, the court will permit plaintiffs an opportunity to cure these pleading defects in an amended complaint.  For clarity, the court urges plaintiffs to set forth in their amended complaint a separate section dedicated to their disparate impact claims

in which they identify those particular policies that allegedly have had a disparate impact on minority officers.  Plaintiffs are also encouraged to review the recent Supreme Court and Tenth Circuit case law (cited above) regarding the level of specificity required in identifying such policies.[2]

Defendants also move to dismiss plaintiffs' disparate treatment claims under Title VII based on pleading deficiencies.  While the court agrees with defendants that plaintiffs' complaint is deficient under Rule 8(a)(2), the court declines to dismiss the claims and will permit plaintiffs to file an amended complaint that plainly states the claims of each plaintiff.  In their present complaint, plaintiffs generally assert that defendants have engaged in race discrimination in numerous respects–pay practices; termination; promotions; discipline; unspecified "terms and conditions" of employment; transfer opportunities; overtime opportunities; and performance standards.  Absent from the complaint, however, are allegations linking each plaintiff to a specific Title VII claim or legal theory (e.g., failure to promote; wage discrimination; hostile

---

[2]Defendants also move to dismiss plaintiffs' section 1983 claims to the extent those claims are based on defendants' "turning a blind eye to discriminatory impact that the neutral policies had upon the plaintiffs and Class" because the complaint does not identify any neutral policies.  Because plaintiffs are required to amend their complaint with respect to their disparate impact claims under Title VII by identifying specific facially neutral policies, the court presumes that the amendment will cure this alleged defect in plaintiffs' section 1983 pleading.  Defendants also assert that the section 1983 claims should be dismissed because plaintiffs' complaint does not include any allegations supporting the assertion that defendants were "deliberately indifferent" to plaintiffs' rights or that defendants "failed to adequately train staff."  The court disagrees.  The complaint alleges that defendants had actual knowledge of race discrimination in the workplace and intentionally ignored complaints about such discrimination.  The complaint also alleges that supervisory employees are not trained with respect to the rights of minority employees.

work environment; retaliation).  In essence, the complaint states only that plaintiffs are all African-Americans; defendants routinely treat all African-Americans less favorably than Caucasians in all respects; and, thus, plaintiffs are entitled to relief.  To satisfy Rule 8(a)(2), plaintiffs, at a minimum, must identify, for each plaintiff, the specific claim or claims that would entitle that plaintiff to relief.  *See Leonard v. Standell*, 2005 WL 1995590, at *1-2 (10th Cir. Aug. 19, 2005) (plaintiff's complaint did not comply with Rule 8(a) where plaintiff failed to allege specific claims for relief, including specific acts of defendants that allegedly violated his civil rights).  It is also unclear from the complaint whether plaintiffs intend to assert a *Teamsters* pattern and practice claim against defendants.  While plaintiffs generally use the phrase "pattern and practice" in their complaint, it is not set forth as a separate claim.  In filing their amended complaint, plaintiffs should so clarify the nature of this claim, if any.

*Failure to Exhaust Administrative Remedies*

Defendants move to dismiss the Title VII claims of all plaintiffs except Glendell Henderson pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the court lacks subject matter jurisdiction over these claims. Specifically, defendants assert that dismissal is appropriate because no plaintiffs other than Mr. Henderson filed charges of discrimination and, thus, these plaintiffs have not exhausted their administrative remedies.  In response, plaintiffs assert that they are excused from the individual filing requirement by virtue of the single-filing rule and that dismissal of their claims is therefore inappropriate. As will be explained, the court concludes that the single-filing rule applies to the circumstances here such

8

that all plaintiffs will be deemed to have exhausted their administrative remedies.

The Tenth Circuit most recently examined the scope of the single-filing rule in *Foster v. Ruhrpumpen, Inc*., 365 F.3d 1191 (10th Cir. 2004). In *Foster*, the Circuit described the "single filing" or "piggybacking" exception to the EEOC individual filing requirement as follows:

> Generally speaking, each plaintiff must exhaust his or her administrative remedies by filing a timely EEOC charge prior to bringing suit. However, given the widespread concern over discriminatory employment practices and the congressional intent behind Title VII and the ADEA, the federal courts have universally recognized an exception to the individual filing rule which provides that "in a multiple-plaintiff, non-class action suit, if one plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement." This exception to the individual filing requirement is known alternatively as the "single filing rule" or "piggybacking."

*Id*. at 1197 (citations and quotation omitted). Courts have utilized several different tests in determining whether to apply the single-filing rule:

> The broadest test requires only that the claims of the administrative claimant and the subsequent plaintiff arise out of the same circumstances and occur within the same general time frame. . . . A somewhat narrower test requires that the administrative claim give notice that the discrimination is "class-wide," i.e., that it alleges discrimination against a class of which the subsequent plaintiff is a member. A still narrower test requires that the administrative charge not only allege discrimination against a class but also allege that the claimant purports to represent the class or others similarly situated.

*Id.* at 1197-98 (quoting *Howlett v. Holiday Inns, Inc*., 49 F.3d 189, 195 (6th Cir. 1995)). While it is not clear which, if any, test the Circuit has adopted, *see id.* at 1198 (noting that the Circuit's decision in *Thiessen* references both the broadest test and the somewhat narrower test), it is clear that the single-filing rule is not limited to class actions but also permits a plaintiff to join

individual actions "if the named plaintiff filed a timely administrative charge sufficient to permit 'piggybacking' by the joining plaintiff." *Id.* (quoting *Howlett*, 49 F.3d at 194). Finally, a subsequent plaintiff may only piggyback on a charge if he or she could have filed a timely charge of discrimination at the time the charge-filing plaintiff filed his or her charge. *See Thiessen v. General Elec. Cap. Corp.*, 267 F.3d 1095, 1111 (10th Cir. 2001) (directing district court to include in the opt-in class all plaintiffs who could have filed timely charges of discrimination at the time the named plaintiff filed his charge); *accord Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1226-27 (11th Cir. 2001) (district court should not have permitted plaintiffs to piggyback on charge where claims of those plaintiffs arose after the date that the charge was filed).

Only Glendell Henderson filed a charge of discrimination and, thus, the court turns to examine the scope of his charge. In the "cause of discrimination" portion of his charge of discrimination, Mr. Henderson marked the boxes referencing discrimination on the basis of race, color and retaliation and in the "date discrimination took place" portion of his charge, Mr. Henderson noted that the discrimination was a "continuing action." In the "particulars" section of his charge, Mr. Henderson wrote as follows:

> I. The City of Wichita has systematically discriminated against me and other Minorities. The discrimination is due to the policies and procedures implemented and advanced by the City of Wichita which has a disparate impact upon Minorities. I am an African-American officer. I am qualified for my position.

> II. I have continued to be subjected to a hostile work environment. I seek to represent a class of similarly situated individuals (minority officers) who have been discriminated against. . . .

III.   I have been subjected to retaliation for complaining about racial discrimination on [sic] the Wichita Police Department.  This started around June of 2004.

IV.  Minorities have also been subjected to less pay and promotions.  This discrimination has affected all terms and conditions of employment for all minorities.

V.  In the last 4 months I and several other Minority supervisors have been accused of not possessing the proper managerial skills based on an unofficial survey. . . .

In his charge, then, Mr. Henderson expressly seeks to represent a class of similarly situated individuals and states that all minority officers have been affected by racial discrimination in the Department.  In such circumstances, plaintiffs have satisfied even the narrowest test identified in *Foster* and those plaintiffs who could have filed a charge at the time Mr. Henderson filed his charge will be excused from the exhaustion requirement.  *See Foster*, 365 F.3d at 1199 (plaintiffs excused from exhaustion requirement where charge was made "on behalf of all others similarly situated").[3]  In that regard, Mr. Henderson filed his charge in November 2005.  All plaintiffs in this case are currently employed by the Department.  Thus, based on the nature of the allegations in Mr. Henderson's charge and those in the complaint, it appears that any plaintiff who was employed by the Department at the time Mr. Henderson filed his complaint would have been able to file a charge at that time.[4]  Plaintiffs, then, should file an amended complaint specifically

---

[3]Defendants contend that the claims of all plaintiffs are not factually similar such that the single-filing rule should not apply.  The complaint, however, indicates that all plaintiffs were subjected to the same discriminatory practices and policies.

[4]Defendants are free to raise the exhaustion issue on a motion for summary judgment once discovery is completed if the discovery process reveals that one or more plaintiffs could

alleging whether each plaintiff named in the complaint could have filed a charge of discrimination at the time Mr. Henderson filed his charge. To the extent one or more plaintiffs were not yet employed by the Department at the time Mr. Henderson filed his charge, defendants may again move for the dismissal of the claims of those plaintiffs.

*Section 1981 Claim*

Both defendants move to dismiss plaintiffs' section 1981 claims on the grounds that plaintiffs have not alleged a contractual relationship which was impaired as a result of racial discrimination. This argument is rejected. The contractual relationships that form the basis of plaintiffs' section 1981 claims are plaintiffs' underlying employment contracts with the City. *See Exum v. U.S. Olympic Committee*, 389 F.3d 1130, 1134 (10th Cir. 2004) (Section 1981 "protects employees from racial discrimination both in entering into an employment contract and in enjoying the benefits, privileges, terms and conditions of employment."); *Flores v. City & County of Denver*, 2002 WL 188956, at *2 (10th Cir. Feb. 7, 2002) ("In employment discrimination cases, § 1981 requires that there be an underlying employment contract between the plaintiff and his or her employer, but there is no requirement that the plaintiff must also be in privity of contract with a supervisor or other co-employee before the latter can be sued individually under § 1981.").[5]

_____

not have filed a charge with respect to one or more specific claims.

[5]Indeed, a plaintiff can state a section 1981 claim against an employer even in the absence of a written employment contract and even if the plaintiff is an at-will employee.

In the alternative, the City moves to dismiss plaintiffs' section 1981 claims on the grounds that section 1981 does not provide an independent cause of action against a municipality and that plaintiffs' sole remedy against the City lies under section 1983.  As this court has recently recognized, § 1983 is the sole means for a plaintiff to pursue a § 1981 claim against a municipality.  *See Dockery v. Unified Sch. Dist. No. 231*, 382 F. Supp. 2d 1234, 1240 (D. Kan. 2005) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)).  Plaintiffs urge the court to reconsider its decision in *Dockery* and, in doing so, rely on Tenth Circuit cases from 2003 and 2004.  In March 2006, however, the Tenth Circuit (in a case that neither party references) expressly addressed the issue faced by this court in *Dockery* and, consistent with this court's opinion, held that a section 1981 claim asserted against a municipality must be brought under section 1983.  *See Bolden v. City of Topeka*, 441 F.3d 1129, 1134-37 (10th Cir. 2006). Plaintiffs' separate cause of action under section 1981 against the City, then, is improper.  The court, however, will permit plaintiffs to amend their complaint so that plaintiffs may clarify that they are pursuing their section 1981 claims against the City solely through the remedies provided by section 1983.  *See id.* at 1137.


*Official Capacity and Personal Capacity Claims Against Defendant Williams*

Defendant Williams moves to dismiss all claims against him in his official capacity and

---

*See Flores*, 2002 WL 188956, at *3 (no written contract necessary); *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1257 (10th Cir. 2001) (at-will relationship does not bar recovery under section 1981).

moves to dismiss all Title VII claims asserted against him in his individual capacity.   In response, plaintiffs have declined to address the official capacity argument in any respect and state that they are pursuing their Title VII claims only against the City.   Defendant Williams' motion to dismiss the official capacity claims is granted, see Watson v. Kansas City, Kan., 857 F.2d 690, 695 (10th Cir. 1988) ("A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same."), and his motion to dismiss plaintiffs' Title VII claims is granted as unopposed.

*Qualified Immunity*

Defendant Williams moves to dismiss plaintiffs' section 1983 claim on the grounds of qualified immunity.   Defendant Williams first asserts that there is no allegation in the complaint "affirmatively linking any action by defendant Williams to the alleged constitutional violation," a violation of the constitutional right to equal protection.   The court disagrees.   Plaintiffs allege in their complaint that defendant Williams "has consistently ignored complaints about [discriminatory] working conditions, inadequately addressed minority complaints, and failed to implement steps to eliminate these unlawful working conditions."   Plaintiffs further allege in their complaint that defendant Williams "has been aware of the disparate impact upon minorities that the policies and procedures of the Department have had on minorities, and yet has failed to correct these policies."   Defendant Williams' inaction in the face of actual knowledge of discriminatory conduct, if proven, violates plaintiffs' constitutional rights to equal protection. *See Fye v. Oklahoma Corp. Comm'n*, 2006 WL 895237, at * (10th Cir. Apr. 6, 2006)

14

(supervisor's failure to investigate sexual harassment complaint was sufficient to establish supervisory liability under section 1983; conduct violated constitutional right that was clearly established at the time and supervisor was not entitled to qualified immunity); *Johnson v. Martin*, 195 F.3d 1208, 1220 (10th Cir. 1999) (same).

Defendant Williams also asserts that he is entitled to qualified immunity because the specific actions taken by him and challenged by plaintiffs are discretionary functions. However, government officials performing discretionary functions are shielded from liability only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). Depriving a person of equal protection of the laws based on race has long been a clearly established violation of federal law. *See Ramirez v. Dept. of Corrections*, 222 F.3d 1238, 1244 (10th Cir. 2000) (citing *Poolaw v. City of Anadarko, Oklahoma*, 660 F.2d 459, 462 (10th Cir. 1981) ("[t]he protection afforded by § 1983 includes relief from discriminatory employment practices of public employers"). This argument, then, is rejected.

In sum, the court denies defendant Williams' motion to dismiss on qualified immunity grounds. He remains free to raise this issue on a motion for summary judgment once discovery is completed.

*Class Action Claim*

Defendants move to dismiss plaintiffs' class action claim on the grounds that it "is obvious no class action could be certified" under Rule 23(b)(2) or Rule 23(b)(3). While the

court declines to address at this juncture the merits of the certification issue, *see Briggs v. Aldi, Inc. (Kansas)*, 218 F. Supp. 2d 1260, 1265 (D. Kan. 2002), the court has examined plaintiffs' complaint and, more specifically, plaintiffs' class action claim and concludes that the claim survives a motion to dismiss for failure to state a claim.  According to this court's Local Rules, a class action complaint must contain appropriate allegations "thought to justify" the class action claim, including the size and definition of the class; the basis upon which plaintiff claims to be an adequate representative of the class; the alleged question of law or fact claimed to be common to the class; and, for actions sought to be maintained under Rule 23(b)(3), allegations thought to support the findings required by that subdivision.  *See* D. Kan. R. 23.1(a).  The complaint must also reference the portion or portions of Rule 23 under which it is claimed that the suit is properly maintainable as a class action.  *Id.*

In their complaint, plaintiffs assert that the class action claim is brought pursuant to Rule 23(b)(2) and Rule 23(b)(3).  The complaint defines the class as all minority police officers currently or formerly employed by the Wichita Police Department and estimates the size of the class to be approximately 200 individuals.  Plaintiffs allege that they are adequate representatives of the class because, like the class they seek to represent, they are current or former police officers of the Wichita Police Department and have been subjected to a racially hostile work environment; denied promotions based on race; denied overtime opportunities based on race; denied transfer opportunities based on race; paid less wages based on race; and disciplined more severely based on race.  In sum, plaintiffs assert that the police department's employment practices were racially discriminatory and that they, like all members of the class, are or have

16

been victims of those discriminatory practices.

The complaint also contains numerous allegations concerning the existence of purported common questions of law and fact, including whether minority police officers have been treated less favorably than Caucasian officers with respect to promotions, demotions, job performance, discipline, pay and termination; whether defendants knew or should have known about such disparate treatment; whether defendants failed to take reasonable action to correct the "racial and ethnic bias that permeates" the department's employment practices; and whether defendants have engaged in a pattern and practice of race discrimination. Finally, plaintiffs have alleged that the foregoing common questions of law and fact (as well as others enumerated in the complaint) predominate over individual issues and that a class action is a superior method for the adjudication of plaintiffs' claims such that maintenance of a class action under rule 23(b)(3) is appropriate. Plaintiffs have satisfied the pleading requirements for their class action claim.[6]

*Punitive Damages*

Finally, the City of Wichita moves to dismiss plaintiffs' claims for punitive damages against the City on the grounds that plaintiffs have not asserted any cause of action under which punitive damages would be recoverable against the City. Plaintiffs concede the accuracy of the

---

[6]The primary case relied upon by defendants in support of dismissal is *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004). That case, however, did not address a class claim at the pleading stage. Rather, the Circuit affirmed the district court's denial of plaintiffs' motion for class certification and it is at that stage of this case when the court will more fully analyze the arguments asserted by defendants in support of their motion to dismiss. *See* D. Kan. R. 23.1(b).

City's argument and agree to the dismissal of their punitive damages claims against the City. With respect to this issue, then, the motion to dismiss is granted as unopposed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss (doc. 4) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs may file an amended complaint, consistent with this opinion, no later than Friday, September 15, 2006.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs shall obtain service of process on defendant Williams no later than Friday, September 29, 2006.

**IT IS SO ORDERED.**

Dated this 18th day of August, 2006, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge